SMITH EIBELER, LLC
Robert W. Smith, Esq.
101 Crawfords Corner Road, Suite 1-105R
Holmdel, New Jersey 07733
Tel:  (732) 935-7246
Fax: (732) 444-1096

MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
Tel:  (513) 651-3700
Fax: (513) 665-0219
Attorneys for Plaintiff

<div align="center">

In the United States District Court
For the District of New Jersey

</div>

---

| | |
|---|---|
| Joseph Martin and Benjamin Brislawn, | |
| *On behalf of themselves and those similarly situated*, | Case No. |
| Plaintiffs, | Judge |
| v. | Magistrate Judge |
| MSK Management, LLC; Mohammed S. Khan a/k/a Mike Khan; Boonton Pizza Corporation; Elizabeth Pizza Corporation; Leonia Pizza, Inc.; Jersey Pizza, Inc.; Khan Enterprises, Inc.; Mount Penn Pizza, Inc.; Penn Street Pizza, Inc.; 125 N. Lewis Road LLC; 461 Springfield Ave. LLC; 335 Valley Road, Limited Liability Company; 1046 Clinton Ave, LLC; 441-443 MLK Blvd, LLC; 115-125 Saint Georges Ave. LLC; 479 Pompton Ave. LLC; SI Pizza, Inc.; John Doe Corp. 1-10; John Doe 1-10. | Jury Demand Endorsed Hereon |
| Defendants. | |

---

<div align="center">

Class and Collective Action Complaint

</div>

---

1.      Plaintiffs Joseph Martin and Benjamin Brislawn, on behalf of themselves and all similarly-situated individuals, bring this action against MSK Management, LLC, Mohammad S. Khan a/k/a Mike Khan, Boonton Pizza Corporation; Elizabeth Pizza Corporation; Leonia Pizza, Inc.; Jersey Pizza, Inc.; Khan Enterprises, Inc.; Mount Penn Pizza, Inc.; Penn Street Pizza, Inc.; 125 N. Lewis Road LLC; 461 Springfield Ave. LLC; 335 Valley Road, Limited Liability Company; 1046 Clinton Ave, LLC; 441-443 MLK Blvd, LLC; 115-125 Saint Georges Ave. LLC; 479 Pompton Ave. LLC; SI Pizza, Inc.; John Doe Corp. 1-10; and John Doe 1-10 based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), New Jersey Minimum Wage Law ("NJMWL"), N.J. Stat. Ann. 12:56-6.1 *et seq.*, the New Jersey Wage Payment Law ("NJWPL"), Pennsylvania Minimum Wage Law ("PMWA") 43 STAT.ANN. §333.01, 43 STAT.ANN §333.104(c), and 43 P.S. § 251

2.      Defendants operate pizza restaurants in Pennsylvania and New Jersey.

3.      Plaintiff Benjamin Brislawn worked for Defendants as a pizza delivery driver at one of their New Jersey Stores.

4.      Plaintiff Joseph Martin worked for Defendants as a pizza delivery driver at one of their Pennsylvania stores.

5.      Defendants repeatedly and willfully violated the Fair Labor Standards Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

6.      All delivery drivers at the Defendants' stores, including Plaintiffs, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

7.      Plaintiffs bring this action on behalf of themselves and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

8.      Plaintiff Benjamin Brislawn brings this action on behalf of himself and similarly situated current and former delivery drivers in New Jersey, pursuant to Fed. R. Civ. P. 23, to remedy violations of New Jersey wage and hour law by Defendants.

9.      Plaintiff Martin brings this action on behalf of himself and similarly situated current and former delivery drivers in Pennsylvania, pursuant to Fed. R. Civ. P. 23, to remedy violations of Pennsylvania wage and hour law by Defendants.

## I.      Jurisdiction and Venue

10.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs' FLSA claims.

11.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff Benjamin Brislawn's New Jersey state law claims.

12.     Under 28 U.S.C. § 1367, this Court supplemental jurisdiction over Plaintiff Joseph Martin's Pennsylvania state law claims.

13.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district and a substantial part of the events giving rise to the claim herein occurred in this district.

## II.      Parties

**Plaintiffs**

**Joseph Martin**

14.     At all times relevant, Plaintiff Joseph Martin resided in Temple, Pennsylvania.

15.    Plaintiff was an "employee" of all of the Defendants as defined in the FLSA.

16.    Plaintiff Joseph Martin has given written consent to join this action.

**Benjamin Brislawn**

17.    At all times relevant, Plaintiff Benjamin Brislawn resided in Allentown, Pennsylvania.

18.    Plaintiff was an "employee" of all of the Defendants as defined in the FLSA.

19.    Plaintiff Benjamin Brislawn has given written consent to join this action.

**Defendants**

20.    Defendants have jointly employed Plaintiffs and similarly situated delivery drivers at all times relevant.

21.    Each of the Defendants had substantial control over Plaintiffs and similarly situated delivery drivers' working conditions, and over the unlawful policies and practices alleged herein.

22.    Defendants are part of a single integrated enterprise.

23.    At all relevant times, the restaurants shared common management and were centrally controlled and/or owned by Defendants.

24.    At all relevant times, all Defendants maintained control over labor relations at Defendants' stores.

25.    During all relevant times, Defendants permitted employees to transfer or be shared by and between the Defendants' stores without retraining.

26.    Defendants share or co-determine those matters governing the essential terms and conditions of employment for Plaintiffs and similarly situated delivery drivers at Defendants' stores.

27.     Defendants suffer or permit Plaintiffs and other delivery drivers to work.

28.     Defendants have direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated delivery drivers, and also exercise that authority.

29.     During all relevant times, Defendants also exercised operational control over the delivery drivers at Defendants' stores, including, but not limited to, control over recruiting and training of delivery drivers, compensation of delivery drivers, job duties of delivery drivers, reimbursements to delivery drivers, recruiting and training managers, design and layout of the restaurants, sales and marketing programs, public relations programs, promotional services, appearance and conduct standards, inventory, and inventory controls.

**MSK Management, LLC**

30.     Defendant MSK Management, LLC is a corporation with its principal place of business in East Orange, New Jersey.

31.     Upon information and belief, Mohammad Khan a/k/a Mike Khan is and has been the owner and operator of MSK Management, LLC.

32.     MSK Management, LLC is the corporate entity that appears on Plaintiffs' paystubs for work completed for Defendants.

33.     MSK Management, LLC owns and operates Domino's restaurants in Pennsylvania and New Jersey.

34.     MSK Management, LLC operates out of its headquarters at 441 Main St., East Orange, NJ 07018-3211.

35. MSK Management, LLC has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

36. Upon information and belief, MSK Management, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

37. MSK Management, LLC has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

38. At all relevant times, MSK Management, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

39. MSK Management, LLC is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

40. At all relevant times, MSK Management, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

41. MSK Management, LLC's gross revenue exceeds $500,000 per year.

**Boonton Pizza Corporation**

42. Defendant Boonton Pizza Corporation is a corporation with its principal place of business in East Orange, New Jersey.

43.     Upon information and belief, Mohammad Khan a/k/a Mike Khan is and has been the owner and operator of Boonton Pizza Corporation.

44.     Boonton Pizza Corporation owns and operates Domino's restaurants in Pennsylvania and New Jersey.

45.     Boonton Pizza Corporation operates out of its headquarters at 441 Main St., East Orange, NJ 07018-3211.

46.     Boonton Pizza Corporation has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

47.     Upon information and belief, Boonton Pizza Corporation applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

48.     Boonton Pizza Corporation has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

49.     At all relevant times, Boonton Pizza Corporation maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

50.     Boonton Pizza Corporation is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

51.     At all relevant times, Boonton Pizza Corporation has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

52.     Boonton Pizza Corporation's gross revenue exceeds $500,000 per year.

**Elizabeth Pizza Corporation**

53.     Defendant Elizabeth Pizza Corporation is a corporation with its principal place of business in East Orange, New Jersey.

54.     Upon information and belief, Mohammad Khan a/k/a Mike Khan is and has been the owners and operator of Elizabeth Pizza Corporation.

55.     Elizabeth Pizza Corporation owns and operates Domino's restaurants in Pennsylvania and New Jersey.

56.     Elizabeth Pizza Corporation operates out of its headquarters at 441 Main St., East Orange, NJ 07018-3211.

57.     Elizabeth Pizza Corporation has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

58.     Upon information and belief, Elizabeth Pizza Corporation applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

59.     Elizabeth Pizza Corporation has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

60.     At all relevant times, Elizabeth Pizza Corporation maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

61.     Elizabeth Pizza Corporation is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

62.     At all relevant times, Elizabeth Pizza Corporation has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

63.     Elizabeth Pizza Corporation's gross revenue exceeds $500,000 per year.

**Leonia Pizza, Inc.**

64.     Defendant Leonia Pizza, Inc. is a corporation with its principal place of business in East Orange, New Jersey.

65.     Upon information and belief, Mohammad Khan a/k/a Mike Khan is and has been the owners and operator of Leonia Pizza, Inc.

66.     Leonia Pizza, Inc. owns and operates Domino's restaurants in Pennsylvania and New Jersey.

67.     Leonia Pizza, Inc. operates out of its headquarters at 441 Main St., East Orange, NJ 07018-3211.

68.     Leonia Pizza, Inc. has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

69.     Upon information and belief, Leonia Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at

all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

70.     Leonia Pizza, Inc.  Corporation has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

71.     At all relevant times, Leonia Pizza, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

72.     Leonia Pizza, Inc. is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

73.     At all relevant times, Leonia Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

74.     Leonia Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**Jersey Pizza, Inc.**

75.     Defendant Jersey Pizza, Inc. is a corporation with its principal place of business in East Orange, New Jersey.

76.     Upon information and belief, Mohammad Khan a/k/a Mike Khan is and has been the owners and operator of Jersey Pizza, Inc.

77.     Jersey Pizza, Inc. owns and operates Domino's restaurants in Pennsylvania and New Jersey.

78.     Jersey Pizza, Inc. operates out of its headquarters at 441 Main St., East Orange, NJ 07018-3211.

10

79.     Jersey Pizza, Inc. has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

80.     Upon information and belief, Jersey Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

81.     Jersey Pizza, Inc.  Corporation has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

82.     At all relevant times, Jersey Pizza, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

83.     Jersey Pizza, Inc. is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

84.     At all relevant times, Jersey Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

85.     Jersey Pizza, Inc.'s gross revenue exceeds $500,000 per year

**Khan Enterprises, Inc.**

86.     Defendant Khan Enterprises, Inc. is a corporation with its principal place of business in East Orange, New Jersey.

87.     Upon information and belief, Mohammad Khan a/k/a Mike Khan is and has been the owners and operator of Khan Enterprises, Inc.

11

88.     Khan Enterprises, Inc. owns and operates Domino's restaurants in Pennsylvania and New Jersey.

89.     Khan Enterprises, Inc. operates out of its headquarters at 441 Main St., East Orange, NJ 07018-3211.

90.     Khan Enterprises, Inc. has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

91.     Upon information and belief, Khan Enterprises, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

92.     Khan Enterprises, Inc. Corporation has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

93.     At all relevant times, Khan Enterprises, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

94.     Khan Enterprises, Inc. is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

95.     At all relevant times, Khan Enterprises, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

96.     Khan Enterprises, Inc.'s gross revenue exceeds $500,000 per year.

**Mount Penn Pizza, Inc.**

97.     Defendant Mount Penn Pizza, Inc. is a corporation with its principal place of business in East Orange, New Jersey.

98.     Upon information and belief, Mohammad Khan a/k/a Mike Khan is and has been the owners and operator of Mount Penn Pizza, Inc.

99.     Mount Penn Pizza, Inc. owns and operates Domino's restaurants in Pennsylvania and New Jersey.

100.    Mount Penn Pizza, Inc. operates out of its headquarters at 441 Main St., East Orange, NJ 07018-3211.

101.    Mount Penn Pizza, Inc. has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

102.    Upon information and belief, Mount Penn Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

103.    Mount Penn Pizza, Inc. Corporation has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

104.    At all relevant times, Mount Penn Pizza, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

105.    Mount Penn Pizza, Inc. is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

106.    At all relevant times, Mount Penn Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

107.    Mount Penn Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**Penn Street Pizza, Inc**

108.    Defendant Penn Street Pizza, Inc. is a corporation with its principal place of business in East Orange, New Jersey.

109.    Upon information and belief, Mohammad Khan a/k/a Mike Khan is and has been the owners and operator of Penn Street Pizza, Inc.

110.    Penn Street Pizza, Inc. owns and operates Domino's restaurants in Pennsylvania and New Jersey.

111.    Penn Street Pizza, Inc. operates out of its headquarters at 441 Main St., East Orange, NJ 07018-3211.

112.    Penn Street Pizza, Inc. has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

113.    Upon information and belief, Penn Street Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

114.    Penn Street Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

115.    At all relevant times, Penn Street Pizza, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

116.    Penn Street Pizza, Inc. is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

117.    At all relevant times, Penn Street Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

118.    Penn Street Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**125 N. Lewis Road LLC**

119.    Defendant 125 N. Lewis Road LLC is a corporation with its principal place of business in East Orange, New Jersey.

120.    Upon information and belief, Mohammad Khan a/k/a Mike Khan is and has been the owners and operator of 125 N. Lewis Road LLC.

121.    125 N. Lewis Road LLC owns and operates Domino's restaurants in Pennsylvania and New Jersey.

122.    125 N. Lewis Road LLC operates out of its headquarters at 441 Main St., East Orange, NJ 07018-3211.

123.    125 N. Lewis Road LLC has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

124.     Upon information and belief, 125 N. Lewis Road LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

125.     125 N. Lewis Road LLC has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

126.     At all relevant times, 125 N. Lewis Road LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

127.     125 N. Lewis Road LLC is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

128.     At all relevant times, 125 N. Lewis Road LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

129.     125 N. Lewis Road LLC's gross revenue exceeds $500,000 per year.

**461 Springfield Ave. LLC**

130.     Defendant 461 Springfield Ave. LLC is a corporation with its principal place of business in East Orange, New Jersey.

131.     Upon information and belief, Mohammad Khan a/k/a Mike Khan is and has been the owners and operator of 461 Springfield Ave. LLC.

132.     461 Springfield Ave. LLC owns and operates Domino's restaurants in Pennsylvania and New Jersey.

16

133.    461 Springfield Ave. LLC operates out of its headquarters at 441 Main St., East Orange, NJ 07018-3211.

134.    461 Springfield Ave. LLC has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

135.    Upon information and belief, 461 Springfield Ave. LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

136.    461 Springfield Ave. LLC has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

137.    At all relevant times, 461 Springfield Ave. LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

138.    461 Springfield Ave. LLC is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

139.    At all relevant times, 461 Springfield Ave. LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

140.    461 Springfield Ave. LLC's gross revenue exceeds $500,000 per year.

**335 Valley Road, Limited Liability Company**

141.    Defendant 335 Valley Road, Limited Liability is a limited liability company with its principal place of business in East Orange, New Jersey.

142.    Upon information and belief, Mohammad Khan a/k/a Mike Khan is and has been the owners and operator of 335 Valley Road, Limited Liability Company.

143.    335 Valley Road, Limited Liability Company owns and operates Domino's restaurants in Pennsylvania and New Jersey.

144.    335 Valley Road, Limited Liability Company operates out of its headquarters at 441 Main St., East Orange, NJ 07018-3211.

145.    335 Valley Road, Limited Liability Company has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

146.    Upon information and belief, 335 Valley Road, Limited Liability Company applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

147.    335 Valley Road, Limited Liability Company has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

148.    At all relevant times, 335 Valley Road, Limited Liability Company maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

149.    335 Valley Road, Limited Liability Company is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

150.    At all relevant times, 335 Valley Road, Limited Liability Company has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

151.    335 Valley Road, Limited Liability Company's gross revenue exceeds $500,000 per year.

**1046 Clinton Ave., LLC**

152.    Defendant 1046 Clinton Ave., LLC is a corporation with its principal place of business in East Orange, New Jersey.

153.    Upon information and belief, Mohammad Khan a/k/a Mike Khan is and has been the owners and operator of 1046 Clinton Ave., LLC.

154.    1046 Clinton Ave., LLC owns and operates Domino's restaurants in Pennsylvania and New Jersey.

155.    1046 Clinton Ave., LLC operates out of its headquarters at 441 Main St., East Orange, NJ 07018-3211.

156.    1046 Clinton Ave., LLC has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

157.    Upon information and belief, 1046 Clinton Ave., LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

158.    1046 Clinton Ave., LLC has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

159.    At all relevant times, 1046 Clinton Ave., LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

160.    1046 Clinton Ave., LLC is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

161.    At all relevant times, 1046 Clinton Ave., LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

162.    1046 Clinton Ave., LLC's gross revenue exceeds $500,000 per year.

**441-443 MLK Blvd., LLC**

163.    Defendant 441-443 MLK Blvd., LLC is a corporation with its principal place of business in East Orange, New Jersey.

164.    Upon information and belief, Mohammad Khan a/k/a Mike Khan is and has been the owners and operator of 441-443 MLK Blvd., LLC.

165.    441-443 MLK Blvd., LLC owns and operates Domino's restaurants in Pennsylvania and New Jersey.

166.    441-443 MLK Blvd., LLC operates out of its headquarters at 441 Main St., East Orange, NJ 07018-3211.

167.    441-443 MLK Blvd., LLC has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

168.     Upon information and belief, 441-443 MLK Blvd., LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

169.     441-443 MLK Blvd., LLC has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

170.     At all relevant times, 441-443 MLK Blvd., LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

171.     441-443 MLK Blvd., LLC is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

172.     At all relevant times, 441-443 MLK Blvd., LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

173.     441-443 MLK Blvd., LLC's gross revenue exceeds $500,000 per year.

**115-125 Saint Georges Ave. LLC**

174.     Defendant 115-125 Saint Georges Ave. LLC is a corporation with its principal place of business in East Orange, New Jersey.

175.     Upon information and belief, Mohammad Khan a/k/a Mike Khan is and has been the owners and operator of 115-125 Saint Georges Ave. LLC.

176.     115-125 Saint Georges Ave. LLC owns and operates Domino's restaurants in Pennsylvania and New Jersey.

177.   115-125 Saint Georges Ave. LLC operates out of its headquarters at 441 Main St., East Orange, NJ 07018-3211.

178.   115-125 Saint Georges Ave. LLC has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

179.   Upon information and belief, 115-125 Saint Georges Ave. LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

180.   115-125 Saint Georges Ave. LLC has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

181.   At all relevant times, 115-125 Saint Georges Ave. LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

182.   115-125 Saint Georges Ave. LLC is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

183.   At all relevant times, 115-125 Saint Georges Ave. LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

184.   115-125 Saint Georges Ave. LLC's gross revenue exceeds $500,000 per year.

**479 Pompton Ave. LLC**

185.    Defendant 479 Pompton Ave. LLC is a corporation with its principal place of business in East Orange, New Jersey.

186.    Upon information and belief, Mohammad Khan a/k/a Mike Khan is and has been the owners and operator of 479 Pompton Ave. LLC.

187.    479 Pompton Ave. LLC owns and operates Domino's restaurants in Pennsylvania and New Jersey.

188.    479 Pompton Ave. LLC operates out of its headquarters at 441 Main St., East Orange, NJ 07018-3211.

189.    479 Pompton Ave. LLC has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

190.    Upon information and belief, 479 Pompton Ave. LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

191.    479 Pompton Ave. LLC has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

192.    At all relevant times, 479 Pompton Ave. LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

193.    479 Pompton Ave. LLC is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

194.    At all relevant times, 479 Pompton Ave. LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

195.    479 Pompton Ave. LLC's gross revenue exceeds $500,000 per year.

**SI Pizza, Inc.**

196.    Defendant SI Pizza, Inc. is a corporation with its principal place of business in East Orange, New Jersey.

197.    Upon information and belief, Mohammad Khan a/k/a Mike Khan is and has been the owners and operator of SI Pizza, Inc.

198.    SI Pizza, Inc. owns and operates Domino's restaurants in New York.

199.    SI Pizza, Inc. operates out of its headquarters at 441 Main St., East Orange, NJ 07018-3211.

200.    SI Pizza, Inc. has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

201.    Upon information and belief, SI Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

202.    SI Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

203.    At all relevant times, SI Pizza, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

204.    SI Pizza, Inc. is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

205.    At all relevant times, SI Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

206.    SI Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**John Doe Corp. 1-10**

207.    Upon information and belief, Defendants own and operate other entities and/or limited liability companies that also qualify as Plaintiff's "employer" under the FLSA and New Jersey law.

208.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Muhammad Khan a/k/a Mike Khan ("Mike Khan")**

209.    Upon information and belief, Mike Khan is the owner and operator of MSK Management, LLC; Boonton Pizza Corporation; Elizabeth Pizza Corporation; Leonia Pizza, Inc.; Jersey Pizza, Inc.; Khan Enterprises, Inc.; Mount Penn Pizza, Inc.; Penn Street Pizza, Inc.; 125 N. Lewis Road, LLC; 461 Springfield Ave. LLC; 335 Valley Road, Limited Liability Company; 1046 Clinton Ave., LLC; 441-443 MLK Blvd., LLC; 115-125 Saint Georges Ave. LLC; 479 Pompton Ave. LLC; SI Pizza, Inc.; John Doe Corp. 1-10 (collectively, "MSK Management" or "Defendants" stores).

210.    Mike Khan is individually liable to the MSK Management stores' delivery drivers under the definitions of "employer" set forth in the FLSA because he owns and operates the MSK Management stores, serves as a manager of the MSK Management stores, controls

25

significant aspects of the MSK Management stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

211.    At all relevant times, by virtue of his role as owner and operator of the MSK Management stores, Mike Khan has had financial control over the operations at each of the MSK Management stores.

212.    At all relevant times, by virtue of his role as owner and operator of the MSK Management stores, Mike Khan has a role in significant aspects of the MSK Management stores' day to day operations.

213.    At all relevant times, by virtue of his role as owner and operator of the MSK Management stores, Mike Khan has had control over the MSK Management stores' pay policies.

214.    At all relevant times, by virtue of his role as owner and operator of the MSK Management stores, Mike Khan has had power over personnel and payroll decisions at the MSK Management stores, including, but not limited to, influence of delivery driver pay.

215.    At all relevant times, by virtue of his role as owner and operator of the MSK Management stores, Mike Khan has had the power to hire, fire and discipline employees, including delivery drivers at the MSK Management stores.

216.    At all relevant times, by virtue of his role as owner and operator of the MSK Management stores, Mike Khan has had the power to stop any illegal pay practices that harmed delivery drivers at the MSK Management stores.

217.    At all relevant times, by virtue of his role as owner and operator of the MSK Management stores, Mike Khan has had the power to transfer the assets and liabilities of the MSK Management stores.

218.    At all relevant times, by virtue of his role as owner and operator of the MSK Management stores, Mike Khan has had the power to declare bankruptcy on behalf of the MSK Management stores.

219.    At all relevant times, by virtue of his role as owner and operator of the MSK Management stores, Mike Khan has had the power to enter into contracts on behalf of each of the MSK Management stores.

220.    At all relevant times, by virtue of his role as owner and operator of the MSK Management stores, Mike Khan has had the power to close, shut down, and/or sell each of the MSK Management stores.

221.    At all relevant times, by virtue of his role as owner and operator of the MSK Management stores, Mike Khan had authority over the overall direction of each of the MSK Management stores and was ultimately responsible for their operations.

222.    The MSK Management stores function for Mike Khan's profit.

223.    Mike Khan has influence over how the MSK Management stores can run more profitably and efficiently.

**John Doe Individuals 1-10**

224.    Upon information, there are other Defendants who own and operate the MSK Management stores that also qualify as Plaintiffs' "employer" under the FLSA.

225.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**III.    Facts**

**Class-wide Factual Allegations**

226.    During all relevant times, MSK Management operated Domino's Pizza Stores.

227.    The primary function of the Defendants' stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

228.    Some or all of Defendants' stores employ delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

229.    Plaintiffs and the similarly situated employees Plaintiffs seek to represent are current and former delivery drivers employed by Defendants at the MSK Management stores.

230.    All delivery drivers employed at the MSK Management stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

231.    When there are no deliveries to make, Defendants' delivery drivers are required to work inside the MSK Management stores doing related and non-tipped work such as building pizza boxes, cleaning, preparing pizza and other food items, and completing other duties inside the restaurant as necessary.

232.    Upon information and belief, Defendants did not provide Plaintiffs and similarly situated drivers with notice of the tip credit rules as required by 29 U.S.C. § 203(m).

233.    Defendants failed to provide proper notice of the tip credit provisions of the FLSA because they failed to pay the wage rate they promised to pay.

234.    At all relevant times, Plaintiffs and similarly situated persons have been paid an hourly wage rate at or close to minimum wage for the hours they worked for Defendants.

235.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

236.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile

maintenance and parts, insurance, financing, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

237.    Pursuant to such requirements, Plaintiffs and other similarly situated employees purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, paid for automobile financing, and incur cell phone and data charges all for the primary benefit of Defendants.

238.    One or more of the MSK Management stores do not reimburse delivery drivers for their actual expenses.

239.    In fact, none of the MSK Management stores reimburse delivery drivers for their actual expenses.

240.    One or more of the MSK Management stores do not reimburse delivery drivers at the IRS standard business mileage rate.

241.    In fact, none of the MSK Management stores reimburse delivery drivers at the IRS standard business mileage rate.

242.    One or more of the MSK Management stores do not reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

243.    In fact, none of the MSK Management stores reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

244.    Delivery drivers at the MSK Management stores typically take at least 2-3 deliveries per hour.

245.    Delivery drivers at the MSK Management stores typically drive approximately five miles per delivery.

246.    For the majority of the relevant time period, delivery drivers at the MSK Management stores were reimbursed a flat rate per delivery. For example, Martin was reimbursed at $1.00 per delivery until a recent change to $.29 per mile. Brislawn was reimbursed at $1.05 per delivery.

247.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

a.  2012: 55.5 cents/mile
b.  2013: 56.5 cents/mile
c.  2014: 56 cents/mile
d.  2015: 57.5 cents/mile
e.  2016: 54 cents/mile
f.  2017: 53.5 cents/mile
g.  2018: 54.5 cents/mile

248.    As a result of the automobile and other job-related expenses incurred by Plaintiffs and other similarly situated delivery drivers, they were deprived of minimum wages guarantee to them by the FLSA.

249.    At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the MSK Management stores.

250.    All of Defendants' delivery drivers had similar experiences to that of Plaintiffs.

251.    They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

252.    Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable

underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

253.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

254.    Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of the MSK Management stores. Thus, although reimbursement amounts may differ somewhat by time or region, the amounts of under-reimbursements relative to automobile costs incurred are relatively consistent between time and region.

255.    Defendants have willfully failed to pay minimum wage to Plaintiffs and similarly situated delivery drivers at the MSK Management stores.

### Plaintiffs' Individual Factual Allegations

**Joseph Martin**

256.    Plaintiff Joseph Martin has worked at the MSK Management store located in Pennsylvania from 2015 to present.

257.    Plaintiff Joseph Martin has worked for MSK Management as a delivery driver in Temple, Pennsylvania.

258.    Plaintiff Joseph Martin was paid a "tipped" minimum wage, *i.e.*, less than minimum wage, while making deliveries.

259.    From August 2015 to June 2017, Plaintiff Joseph Martin was paid $7.25 inside the store and $5.25 outside the store.

260.    Plaintiff Joseph Martin delivered pizza and other food items to Defendants' customers' homes and businesses.

261.    When he was not making deliveries, Plaintiff Joseph Martin worked inside the restaurant, completing tasks such as checking out carryout customers, cutting pizza, folding pizza boxes, cleaning up around the store, and taking care of other general tasks for the operation of the restaurant.

262.    Throughout his employment, Plaintiff Joseph Martin more than 20% of their time at work inside the store completing non-tipped tipped duties

263.    At all relevant times until end of Summer 2017, Plaintiff Joseph Martin was reimbursed $1.00 per delivery.

264.    At all relevant times from the end Summer 2017 forward, Plaintiff Joseph Martin was reimbursed approximately $.29 per mile.

265.    Plaintiff Joseph Martin was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

266.    Plaintiff Joseph Martin was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

267.    Plaintiff Joseph Martin purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, and incur cell phone and data charges all for the primary benefit of Defendants.

268.    Defendants did not track the actual expenses incurred by Joseph Martin.

269.    Defendants did not reimburse Plaintiff Joseph Martin based on his actual delivery-related expenses.

270.    Plaintiff Joseph Martin was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

271.    During Plaintiff Joseph Martin's employment with Defendants, Defendants failed to adequately reimburse Plaintiff Joseph Martin for automobile and other job-related expenses.

272.    Plaintiff Joseph Martin regularly makes three deliveries per hour during the hours he worked as a delivery driver.

273.    Plaintiff Martin regularly drove about 4.5 miles per delivery.

274.    Thus, Defendants' average reimbursement rate for Plaintiff Martin was approximately $.22 per mile ($1.00 per delivery/4.5 average miles per delivery).

275.    In 2015, for example, the IRS business mileage reimbursement has been $.575 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Plaintiff Joseph Martin's automobile expenses, every mile driven on the job decreased his net wages by approximately $.355 ($.575 - $.22) per mile. Considering his low estimate of about 4.5 average miles per delivery, Defendants under-reimbursed him about $1.60 per delivery ($.355 x 4.5 miles).

276.    Thus, while making deliveries (assuming 3 deliveries per hour), Plaintiff Martin consistently "kicked back" to Defendants approximately $4.80 per hour ($1.60 per delivery x 3 deliveries per hour).

277.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff Joseph Martin minimum wage as required by law.

**Benjamin Brislawn**

278.   Plaintiff Benjamin Brislawn worked at the MSK Management store in Stewartsville, New Jersey from approximately August to September 2016.

279.   Plaintiff Benjamin Brislawn was paid "tipped" minimum wage as an hourly rate when he was driving.

280.   Plaintiff Benjamin Brislawn delivered pizza and other food items to Defendants' customers' homes and businesses.

281.   When they were not making deliveries, Plaintiff Benjamin Brislawn worked inside the restaurant, completing tasks such as checking out carryout customers, cutting pizza, folding pizza boxes, cleaning up around the store, and taking care of other general tasks for the operation of the restaurant.

282.   At all relevant times, Plaintiff Benjamin Brislawn received a flat reimbursement rate of $1.05 per delivery.

283.   Plaintiff Benjamin Brislawn was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

284.   Plaintiff Benjamin Brislawn was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, automobile financing, insurance, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

285.   Plaintiff Benjamin Brislawn purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, automobile financing, suffered automobile depreciation, and incur cell phone and data charges all for the primary benefit of Defendants.

286.     Defendants did not track the actual expenses of Plaintiff Benjamin Brislawn.

287.     Defendants did not reimburse Plaintiff Benjamin Brislawn based on his actual delivery-related expenses.

288.     During Plaintiff Benjamin Brislawn's employment, Defendants failed to adequately reimburse Plaintiff Benjamin Brislawn for automobile and other job-related expenses.

289.     Plaintiff Benjamin Brislawn regularly made two to four deliveries per hour during the hours he worked as a delivery driver.

290.     Plaintiff regularly drove about 5 miles per delivery.

291.     Thus, Defendants' average reimbursement rate for Plaintiff Benjamin Brislawn was approximately $.21 per mile ($1.05 per delivery/5 average miles per delivery).

292.     In 2016, for example, the IRS business mileage reimbursement has been $.54 per mile, which reasonably approximated the automobile expenses, incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Plaintiff Benjamin Brislawn's automobile expenses, every mile driven on the job decreased his net wages by approximately $. 33 ($.54-$.21) per mile. Considering an estimated average of about 5 miles per delivery, Defendants under-reimbursed him about $1.65 per delivery ($.33 x 5 miles).

293.     Thus, while making deliveries (assuming an average of 4 deliveries per hour), Plaintiff Benjamin Brislawn consistently "kicked back" to Defendants approximately $4.95 per hour ($1.675 per delivery x 4 deliveries per hour).

294.     Throughout his employment, Plaintiff Benjamin Brislawn more than 20% of their time at work inside the store completing non-tipped tipped duties.

295.    Plaintiff Joseph Martin was not paid minimum wage for hours worked despite working more than 20% of his working time in a non-tipped capacity.

296.    Upon information and belief, Defendants did not provide Plaintiff Benjamin Brislawn s with notice of the tip credit rules as required by 29 U.S.C. § 203(m).

297.    Defendants failed to provide proper notice of the tip credit provisions of the FLSA because they failed to pay the wage rate they promised to pay.

298.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff Benjamin Brislawn minimum wage as required by law.

**Collective Action Allegations**

299.    Plaintiffs bring the First and Second Counts on behalf of themselves and all similarly situated current and former delivery drivers employed at Defendants' stores owned, operated, and controlled by Defendants, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

300.    At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiffs' claims are essentially the same as those of the FLSA Collective.

301.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

302.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

303.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

304.    Defendants are aware or should have been aware that 29 U.S.C. § 203(m) requires them to provide delivery drivers with notice of the tip credit provision of the FLSA.

305.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

306.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

307.    The FLSA Collective members are readily identifiable and ascertainable.

308.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

309.    In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

**Class Action Allegations Under New Jersey Law**

310.    Plaintiff Benjamin Brislawn bring the Third, Fourth, and Fifth Counts under the Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the MSK Management stores in the State of New Jersey from the date six years prior to the filing of this complaint to the date of final judgment in this matter (the "New Jersey Rule 23 Class").

311.    Excluded from the New Jersey Rule 23 are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is

assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the New Jersey Rule 23 class.

312.    The number and identity of the New Jersey Rule 23 class members are ascertainable from Defendants' records.

313.    The hours assigned and worked, the positions held, and the rates of pay and reimbursement for each New Jersey Rule 23 Class Member are determinable from Defendants' records.

314.    For the purposes of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

315.    Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

316.    The New Jersey Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

317.    There are more than 50 New Jersey Rule 23 Class members.

318.    Plaintiff Benjamin Brislawn's claims are typical of those claims that could be alleged by any New Jersey Rule 23 Class member, and the relief sought is typical of the relief that would be sought by each New Jersey Rule 23 Class member in separate actions.

319.    Plaintiff Benajmin Brislawn and the New Jersey Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime, and failing to reimburse for expenses.

320.     Plaintiff Benjamin Brislawn and the New Jersey Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with N.J.S.A. §34:11-56a *et seq.* and N.J.S.A. § 34:11-4-2 *et seq.*

321.     Plaintiff Benjamin Brislawn and the New Jersey Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all New Jersey Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the New Jersey Rule 23 Class members.

322.     Plaintiff Benjamin Brislawn and the New Jersey Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

323.     By seeking to represent the interests of the New Jersey Rule 23 Class members, Plaintiff Benjamin Brislawn is exercising and intending to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

324.     Plaintiff Benjamin Brislawn is able to fairly and adequately protect the interests of the New Jersey Rule 23 Class and has no interests antagonistic to the New Jersey Rule 23 Class.

325.     Plaintiff Benjamin Brislawn is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

326.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a

large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual New Jersey Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual New Jersey Rule 23 Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.

327.    Upon information and belief, Defendants and other employers throughout the state violate the New Jersey Minimum Wage Law ("NJMWL"), N.J. Stat. Ann. 12:56-6.1 *et seq.*; and the New Jersey Wage Payment Law ("NJWPL"). Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

328.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

329.    Common questions of law and fact exist as to the New Jersey Rule 23 Class that predominate over any questions only affecting Plaintiff and the New Jersey Rule 23 Class members individually and include, but are not limited to:

> a.  Whether Defendants paid Plaintiff Benjamin Brislawn and the New Jersey Rule 23 Class members at the proper minimum wage rate for all hours worked;

b.   Whether Plaintiff Benjamin Brislawn and the New Jersey Rule 23 Class drove their own cars for work;

c.   Whether Plaintiff Benjamin Brislawn and the New Jersey Rule 23 Class were reimbursed for their actual expenses, including automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties;

d.   Whether Plaintiff Benjamin Brislawn and the New Jersey Rule 23 Class were reimbursed at the IRS standard business mileage rate for miles they drove completing deliveries for Defendants.

e.   Whether Defendants paid Plaintiff Brislawn and the New Jersey Rule 23 Class at the rate of pay they promised to pay them as described by NJPWL;

f.   Whether Defendants failed to pay Plaintiff Benjamin Brislawn and the New Jersey Rule 23 Class in a timely manner as described by NJPWL;

g.   Whether Defendants' policy of failing to pay Plaintiff Benjamin Brislawn and the New Jersey Rule 23 Class was instituted willfully or with reckless disregard of the law; and

h.   The nature and extent of class-wide injury and the measure of damages for those injuries.

330.   In recognition of the services Plaintiff Benjamin Brislawn has rendered and will continue to render to the New Jersey Rule 23 Class, Plaintiff Benjamin Brislawn will request payment of a service award upon resolution of this action.

**Class Action Allegations Under Pennsylvania Law**

331.   Plaintiff Joseph Martin brings the Sixth, Seventh, and Eighth Counts under the Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

All current and former delivery drivers employed by Defendants at the MSK Management stores in the State of Pennsylvania from the date three years prior to the filing of the complaint to the date of final judgment in this matter (the "Pennsylvania Rule 23 Class").

332.    Excluded from the Pennsylvania Rule 23 are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Pennsylvania Rule 23 class.

333.    The number and identity of the Pennsylvania Rule 23 class members are ascertainable from Defendants' records.

334.    The hours assigned and worked, the positions held, and the rates of pay and reimbursement for each Pennsylvania Rule 23 Class Member are determinable from Defendants' records.

335.    For the purposes of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

336.    Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

337.    The Pennsylvania Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

338.    There are more than 50 Pennsylvania Rule 23 Class members.

339.    Plaintiff Joseph Martin's claims are typical of those claims which could be alleged by any Pennsylvania Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Pennsylvania Rule 23 Class member in separate actions.

340.    Plaintiff Joseph Martin and the Pennsylvania Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime, and failing to reimburse for expenses.

341.    Plaintiff Joseph Martin and the Pennsylvania Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with PMWA 43 STAT.ANN. §333.01 and PMWA 43 STAT.ANN. § 333.104(c), and 43 P.S. § 260.3.

342.    Plaintiff Joseph Martin and the Pennsylvania Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Pennsylvania Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Pennsylvania Rule 23 Class members.

343.    Plaintiff Joseph Martin and the Pennsylvania Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

344.    By seeking to represent the interests of the Pennsylvania Rule 23 Class members, Plaintiff Joseph Martin is exercising and intending to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

345.    Plaintiff Joseph Martin is able to fairly and adequately protect the interests of the Pennsylvania Rule 23 Class and has no interests antagonistic to the Pennsylvania Rule 23 Class.

346.    Plaintiff Joseph Martin is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

347.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Pennsylvania Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Pennsylvania Rule 23 Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.

348.   Upon information and belief, Defendants and other employers throughout the state violate the Pennsylvania Minimum Wage Law 43 STAT.ANN. §333.01 and 43 STAT.ANN §333.104(c), and 43 P.S. § 260.3. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

349.   This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

350.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff Joseph Martin and the Rule 23 Class members individually and include, but are not limited to:

    a.   Whether Defendants paid Plaintiff Joseph Martin and the PennsRule 23 Class members at the proper minimum wage rate for all hours worked;

    b.   Whether Defendants failed to reimburse automobile expenses, gasoline expenses, and other job-related expenses, as described herein, causing Plaintiff Joseph Martin and the Rule 23 Class members' wages to drop below legally allowable minimum wage and overtime;

    c.   Whether Defendants properly compensated Plaintiff Joseph Martin and the Rule 23 Class for hours worked in excess of 40 each workweek;

    d.   Whether Defendants failed to pay Plaintiff Joseph Martin and the Rule 23 Class in a timely manner as described by 43 P.S. § 260.3;

    e.   Whether Defendants' policy of failing to pay Plaintiff Joseph Martin and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

    f.   The nature and extent of class-wide injury and the measure of damages for those injuries.

351.    In recognition of the services Plaintiff Joseph Martin has rendered and will continue to render to the Rule 23 Class, Plaintiff Joseph Martin will request payment of a service award upon resolution of this action.

**IV.    Causes of Action**

<div align="center">

**<u>Count 1</u>**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiffs and the FLSA Collective)**

</div>

352.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

353.    Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

354.    Defendants paid Plaintiffs and the FLSA Collective at or close to minimum wage for all hours worked.

355.    Defendants required and continue to require Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

356.    Upon information and belief, Defendants did not provide Plaintiffs with notice of the tip credit rules as required by 29 U.S.C. § 203(m).

357.    Defendants impermissibly took a tip credit from the wages of Plaintiffs and the FLSA Collective.

358.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs and the FLSA Collective.

359.    Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

360.    As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

### Count 2
### Failure to Pay Overtime Wages—Fair Labor Standards Act
### (On Behalf of Plaintiffs and the FLSA Collective)

361.    Plaintiffs restate and incorporate the following allegations as if fully rewritten herein.

362.    Plaintiffs and the FLSA Collective worked more than forty hours in one or more workweeks.

363.    Because Defendants required Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiffs and the FLSA collective at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

364.    By not paying Plaintiffs and the FLSA collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

365.    As a result of Defendants' willful violations, Plaintiffs and the FLSA collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorney's fees.

### Count 3
### Failure to Pay Minimum Wages—New Jersey Minimum Wage Law, N.J.S.A. § 34:11-56a, *et seq.*
### (On Behalf of Plaintiff Benjamin Brislawn and the New Jersey Rule 23 Class)

366.    Plaintiff Benjamin Brislawn restates and incorporates the following allegations as if fully rewritten herein.

367.    At all times relevant, Plaintiff Benjamin Brislawn and the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Rule 23 Class as defined by the NJMWL and supporting regulations.

368.    Defendants were required to pay Plaintiff Benjamin Brislawn and the Rule 23 Class minimum wage as required by N.J.S.A. § 34:11-56a *et seq*. and the supporting regulations.

369.    Defendants failed to pay Plaintiff Benjamin Brislawn and the Rule 23 Class the minimum hourly wages to which they were entitled under the NJMWL.

370.     Due to Defendants' violations of the NJMWL, Plaintiff Benjamin Brislawn and the Rule 23 Class are entitled to recover unpaid wages, liquidated damages, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest for the six years preceding the filing of this complaint.

### Count 4
### Failure to Make Timely Payments—New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.2
### (On Behalf of Plaintiff Brislawn and the New Jersey Rule 23 Class)

371.     Plaintiff Benjamin Brislawn restates and incorporates by reference all allegations in all preceding paragraphs.

372.     At all times relevant, Plaintiff Benjamin Brislawn and the New Jersey Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiff Benjamin Brislawn and the New Jersey Rule 23 Class as defined by the NJWPL and supporting regulations.

373.     Defendants were required to pay Plaintiff Benjamin Brislawn and the Rule 23 Class all wages due to them at least twice per month during each calendar month as required by N.J.S.A. § 34:11-4.2.

374.     Defendants failed to pay Plaintiff Benjamin Brislawn and the New Jersey Rule 23 Class the wages they were due in a timely manner as required by the NJWPL.

375.     Defendants were prohibited from withholding or diverting the wages of Plaintiff Benjamin Brislawn and the New Jersey Rule 23 Class to cover automobile expenses as required by N.J.S.A § 34:11-4.4.

376.     Due to Defendants' violations of the MJWPL, Plaintiff Benjamin Brislawn and the New Jersey Rule 23 Class are entitled to recover unpaid wages, liquidated damages,

reasonable attorney's fees, costs, and pre-judgment and post-judgment interest for the six years preceding the filing of this complaint.

## Count 5
### Failure to Pay Minimum Wages—43 PA.STAT.ANN. § 333.101 *et seq.*
### (On Behalf of Plaintiff Joseph Martin and the Pennsylvania Rule 23 Class)

377.    Plaintiff Joseph Martin restates and incorporates the following allegations as if fully rewritten herein.

378.    At all times relevant, Plaintiff Joseph Martin and the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Rule 23 Class as defined by the PMWA and supporting regulations.

379.    Defendants were required to pay Plaintiff Joseph Martin and the Rule 23 Class minimum wage as required by 43 PA.STAT.ANN. § 333.104.

380.    Defendants failed to pay Plaintiff Joseph Martin and the Rule 23 Class the minimum hourly wages to which they were entitled under the PMWA.

381.    Due to Defendants' violations of the PMWA, Plaintiff Joseph Martin and the Rule 23 Class are entitled to recover unpaid wages, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest for the two years preceding the filing of this complaint.

## Count 6
### Failure to Pay Overtime Wages—43 PA.STAT.ANN. §331.104(c)
### (On Behalf of Plaintiff Joseph Martin and the Pennsylvania Rule 23 Class)

382.    Plaintiff Joseph Martin restates and incorporates by reference all allegations in all preceding paragraphs.

383.    At all times relevant, Plaintiff Joseph Martin and the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Rule 23 Class as defined by the PMWA and supporting regulations.

384.     Defendants were required to pay Plaintiffs and the Rule 23 Class overtime as required by PA.STAT.ANN. § 333.104(c) and the supporting regulations.

385.     Defendants failed to pay Plaintiff Joseph Martin and the Rule 23 Class the overtime wages to which they were entitled under the PMWA.

386.     Due to Defendants' violations of the PMWA, Plaintiff Joseph Martin and the Rule 23 Class are entitled to recover unpaid wages, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest for the two years preceding the filing of this complaint.

<u>**Count 7**</u>
**Violation of Pennsylvania Wage Payment and Collection Law—43 P.S. § 260.3**
**(On Behalf of Plaintiff Joseph Martin and the Pennsylvania Rule 23 Class)**

387.     Plaintiff Joseph Martin restates and incorporates by reference all allegations in the preceding paragraphs.

388.     At all times relevant, Plaintiff Joseph Martin and the Pennsylvania Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Pennsylvania Rule 23 Class as defined by the PWPCL and supporting regulations.

389.     Defendants failed to pay all wages due to Plaintiff Joseph Martin and the Pennsylvania Rule 23 Class on their regular payday as required by PWPCL.

390.     Defendants were required to pay Plaintiff Joseph Martin and the Pennsylvania Rule 23 Class the first payment of their earnings between the first and fifteenth day of each month and the second payment between the fifteenth and last day of each month as required by 43 P.S. § 260.3.

391.     Defendants failed to pay Plaintiff Joseph Martin and the Rule 23 Class in the timeframe required by 43 P.S. § 260.3.

50

392. Due to Defendants' violations of the 43 P.S. § 260.3, Plaintiff Joseph Martin and the Rule 23 Class are entitled to recover unpaid wages, liquidated damages, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest for the two years preceding the filing of this complaint.

**WHEREFORE**, Plaintiffs prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members;

B. Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure under New Jersey state law;

D. Designation of Plaintiff Benjamin Brislawn as a representative of the New Jersey Rule 23 Class and counsel of record as Class Counsel;

E. Declaratory judgment that the practices complained of herein are unlawful under NJMWL and NJWPL;

F. An award of unpaid minimum wages and unreimbursed expenses due under the NJMWL and NJWPL;

G. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure under Pennsylvania state law;

H.      Designation of Plaintiff Joseph Martin as a representative of the Pennsylvania Rule 23 Class and counsel of record as Class Counsel;

I.      Declaratory judgment that the practices complained of herein are unlawful under the PMWA and 43 P.S. § 260.3;

J.      An award of unpaid minimum wages, overtime wages, unreimbursed expenses, and liquidated damages due under the PMWA and 43 P.S. § 260.3;

K.      Declaratory judgment that the practices complained of herein are unlawful under PMWA and 43 P.S. § 260.3.

L.      An award of prejudgment and post-judgment interest.

M.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

N.      Such other legal and equitable relief as the Court deems appropriate.

DATED: July 20, 2018

*/s/Robert W. Smith*
ROBERT W. SMITH, ESQ.
SMITH EIBELER, LLC
101 Crawfords Corner Road, Suite 1-105R
Holmdel, New Jersey 07733
Tel:  (732)-935-7246

Andrew Biller (pro hac vice application forthcoming)
Andrew Kimble (pro hac vice application forthcoming)
Philip Krzeski (pro hac vice application forthcoming)
Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
513-651-3700 (Phone)
513-665-0219 (Fax)
Email: *abiller@msdlegal.com*
Email: *akimble@msdlegal.com*
Email: *pkrzeski@msdlegal.com*
www.msdlegal.com

*Counsel for Plaintiffs and the putative class*

<u>JURY DEMAND</u>

Plaintiff hereby demands trial by jury on all issues so triable.

<div style="margin-left: 40%;">

*/s/Robert W. Smith*
ROBERT W. SMITH, ESQ.
SMITH EIBELER, LLC
101 Crawfords Corner Road, Suite 1-105R
Holmdel, New Jersey 07733
Tel:  (732)-935-7246
</div>

DATED: July 20, 2018

## <u>VERIFICATION PURSUANT TO LOCAL RULE 11.2</u>

Plaintiffs hereby certify that the matter in controversy is the subject of, or at least related to, another action pending in the United States District Court for the Southern District of Ohio, *Clark v. Pizza Baker, Inc.*, No. 2:18-cv-157-ALM-EPD. Plaintiffs here are plaintiffs in that action, which asserts similar claims against Domino's Pizza, Inc., Domino's Pizza, LLC, Domino's Pizza Franchising, LLC, Pizza Baker, Inc., Precision Pizza LLC, Lisa Burkett, and Christopher Baker. Defendants here are not parties to the *Clark* matter.

<div style="margin-left: 40%;">

*/s/Robert W. Smith*
ROBERT W. SMITH, ESQ.
SMITH EIBELER, LLC
101 Crawfords Corner Road, Suite 1-105R
Holmdel, New Jersey 07733
Tel:  (732)-935-7246
</div>

DATED: July 20, 2018